**LaRusso & Conway**
Attorneys at Law
300 Old Country Road
Mineola, N.Y. 11501

December 30, 2013

Hon. Judge P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York

      Re: United States v. Thomas Hoey Jr.
          Criminal Document NO. CR-11-337S-3(PKC)

Dear Judge Castel:

    This letter motion is respectfully submitted seeking reconsideration of the Court's December 20, 2013 bail ruling that ordered Mr. Hoey detained without bail pending trial. We respectfully submit that Mr. Hoey is neither a risk of flight nor a danger to the community and that the proposed bail package clearly rebuts any presumption of remand. As such, we respectfully request this Court to set a reasonable bail.

**A. Legal Standard**
    "Generally, a court must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community." United States v. Madoff, 586 F.Supp.2d 240, 246 (S.D.N.Y. 2009); see also, 18 U.S.C. § 3142(c)(1)(B). However, the government is permitted to move for a hearing and seek detention under §3142(f)(1) for certain enumerated offenses, including crimes of violence which carry a maximum term of ten years or more or a maximum sentence of life imprisonment or death, and under §3142(f)(2) for cases that involve either "(A) serious risk that the defendant will flee; or (B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice . . ." 18 U.S.C. §3142(f)(2). Only if the evidence presented at the detention hearing shows "no condition or combination of

1

conditions will reasonably assure the appearance of the person required and the safety of any other person and the community," a "judicial officer shall order the detention of the person before trial." 18 U.S.C. §3142(e). [1] Under the Bail Reform Act, "it is only a limited group of offenders' who should be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189).

Because the law generally favors bail release, the government carries a dual burden in seeking pre-trial detention. "First, the court must determine whether the Government has established 'by a preponderance of the evidence that [the defendant] . . . [if released], presents a risk of flight or obstruction of justice.'" United States v. Khashoggi, 717 F.Supp.2d 1048, 1049 (S.D.N.Y. 1989) (quoting United States v, Friedman, 837 F.2d 48, 49 (2d Cir. 1988). Assuming it satisfies this burden, the government must then demonstrate, again by a preponderance of the evidence, that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court. See, United States v. Shakur, 817 F.2d at 195 ("The burden of proof is on the government to prove the absence of such conditions by a preponderance of the evidence."); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). Put another way, if the government carries its primary burden, the Court must then determine whether there are still reasonable conditions of release that can be set or whether detention is appropriate. United States v, Friedman, 837 F.2d at 49; United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986)

Furthermore, to support detention based on dangerousness, the government's evidence must be "clear and convincing." 18 U.S.C. §3142(f)(2). See also, United States v. Shakur, 817 F.2d at 195(citing United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985); United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986).

---

[1] Section 3142(e) enumerates certain crimes that trigger a statutory presumption that no conditions or combination of conditions will reasonably assure a defendant's appearance before the Court or the safety of the community. The defendant's background, lack of criminal record, and proposed bail package substantially rebuts the presumption relied upon by the government to support its detention request under Section 3142(f)(1).

The Bail Reform Act "does not permit detention on the basis of dangerousness in the absence of risk of flight . . . [or] obstruction of justice." United States v, Friedman, 837 F.2d at 49. "[O]bstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000); see also, United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) (Obstruction of justice held to be an "alternative ground for detention," apart from risk of flight and safety to the community); United States v. Gotti, 794 F.2d at 799(referring to "long-standing principle that pretrial detention does not offend due process when it is imposed to prevent a defendant from intimidating witnesses.")(citation omitted).

However, the critical inquiry "is not simply whether [the defendant's] actions can be considered obstruction, but whether there is a serious risk of obstruction in the future. The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibitive behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." United States v. Madoff, 586 F.Supp.2d at 250.

Lastly, in determining whether the government has met its burden of showing (1) by "clear and convincing" evidence that there are no conditions of release that will reasonably assure the safety of any other person and the community and (2) by a preponderance that there is no condition or combination of conditions that would assure a defendant's presence at trial, a court shall consider: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including physical and mental condition, family ties, employment, financial recourses, length of residence in the community, community ties; and past conduct and record of past appearances; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); see also, United States v. Khashoggi, 717 F.Supp.2d 1049(quoting United States v. Chimurenga, 760 F.2d at 403) A review of the evidence viewed against these factors raise serious

3

concerns about the need for defendants' detention in this case.

**B. Argument**
    I.   <u>Risk of Flight</u>

The evidence of Mr. Hoey's background, including his substantial ties to the community, clearly demonstrates that the defendant poses no risk of flight.

Mr. Hoey is a life long resident of New York whose entire family, including his two children, all reside in the metropolitan area. He has no prior criminal record and is a respected businessman,[2] who owns and operates two large companies in Nassau and Suffolk Counties. Mr. Hoey is the Chief Operating Officer of both companies and employs approximately 50 employees.

Additionally, Mr. Hoey has been aware of the government's investigation since its inception almost five years ago, and has continued working and residing in the district the entire period. The government has presented absolutely no evidence that Mr. Hoey planned or sought to flee the jurisdiction. In fact, counsel for the defendant notified the government in writing early this year requesting the opportunity to surrender in the likelihood that the grand jury returned criminal charges.

Because the drug allegations, which Mr. Hoey strenuously denies, carried "a maximum term of imprisonment of ten years or more," the government relied upon the rebuttable presumption to sustain the burden of proving that "no conditions or combination of conditions will reasonably assure the appearance of the person as required . . ." 18 U.S.C. §3142(e)(3). In addition to Mr. Hoey's background, our proposed bail package totaling more than seven million dollars in pledged collateral and the signatures of five financially responsible sureties certainly overcame this presumption, and warranted the defendant's release.

The Pre-Trial Service officer, also cognizant of the nature of the charges, supported our position that Mr. Hoey did not, and does not pose a flight risk, and recommended a

---

[2] Hoey also serves on local hospital boards and is involved in charitable organizations.

bail package that included a substantial bond secured by financially responsible individuals.

Based upon the above, we respectfully submit that Mr. Hoey does not pose a flight risk and that the proposed bail package reasonably assures the defendant's appearance for all future court proceedings.

II. <u>Dangerousness and Obstruction of Justice</u>

Here the Government alleges, as set forth in Counts 3 through 5 of the indictment, that Hoey participated in a scheme to obstruct the investigation by "procuring" Witness 1 to commit perjury (Count 3), attempting to destroy evidence (Count 4) and threatening, pressuring and inducing Witness 1 to make false statements to law enforcement agents, to give false testimony before a grand jury and sign a false statement for future use in an official proceeding (Count 5). Although a grand jury may have found probable cause under the law, Mr. Hoey has pleaded not guilty and is presumed innocent of these charges. Based upon these charges and the evidentiary proffer at the bail hearing, the government moved to detain Mr. Hoey under §3142(f) alleging that Mr. Hoey posed a "serious risk" to obstruct or attempt to obstruct justice and threaten, injure, or intimidate a prospective witness. We submit that the government's proffer failed to prove by "clear and convincing" evidence that Mr. Hoey posed such a serious risk to the prosecution of this case or to Witness 1.

It is clear from the indictment that these obstruction charges are premised principally on the cooperation and testimony of Witness 1, who, as the Court is aware from presiding over her trial, has provided a number of contradictory versions of the events surrounding the tragic death of Kim Calo, ultimately leading to her perjury conviction in February 2013. It cannot be understated that the heart of the government's case against Mr. Hoey certainly rests on the credibility of Witness 1 which has been substantially compromised by, not only the inconsistent versions of events, but a criminal conviction for perjury.

We also must point out that it was Witness 1 who fled the apartment upon learning of Ms. Calo's death, and Mr. Hoey was instrumental in persuading Witness 1 to return to the apartment to speak with the police investigating her

5

death. Only then did she seek to implicate Hoey in an attempt to shield herself from any wrongdoing because she had been partying and doing drugs with the victim before meeting Mr. Hoey.

Furthermore, as it relates to the strength of the government's case as to Count Two, the New York City Police Department in conjunction with the Manhattan District Attorney's Office did an investigation for nine months and brought no charges. The investigation was picked up by the Drug Enforcement Administration and the United States Attorney's office based upon the fact that the victim was related to a Drug Enforcement Agent. At hearings held before the Hon. J. Stein earlier this year, testimony was elicited that former Agent Anderson (the brother of the victim and a former Special Agent in Charge at DEA) has been in contact with the agents on this investigation.

The obstruction allegations set forth in the indictment, allegedly occurred in April and May of 2011, over two and a half years ago. The Government did not proffer any other additional allegations of <u>current</u> obstruction of justice, and certainly nothing that has happened since May of 2011. [3]

The only other allegations the Government proffered at Hoey's bail hearing was that, on the night of the arrest, Hoey attempted to use his personal cell phone to call his lawyer contrary to an agent's instructions and that a car registered to alleged co-conspirator Barry Balaban ("Balaban") was present at the scene of the arrest.

In regard to the first incident, Mr. Hoey had been instructed by his attorney, that in the event of an unexpected arrest, Mr. Hoey should contact the attorney to permit the attorney to speak with the arresting officer. Mr. Hoey was simply following his counsel's advice. In regard to the co-conspirator's car, Mr. Hoey was never inside the vehicle and, at the time of his apprehension, Mr. Hoey was a few blocks away from his business property and from the car registered to Balaban.

---

[3] The obstruction Counts charged in the Indictment relate to alleged activity that took place in or about January 2009 and May 2011. Yet the government waited over 2 and ½ years to file an indictment. Alleging no other recent attempts, we fail to see how the government can allege he poses a future danger to anyone. Furthermore, the Indictment was returned in this case on December 12, 2013, yet they waited a full week before arresting such a danger to the community.

6

We raise these issues for two specific reasons. One, under 18 U.S.C. § 3142(g), the Court must consider, among a number of factors, the strength of the Government's evidence. In the instant case, upon information and belief, the government will be relying principally on the testimony of Witness 1 and circumstantial evidence to establish the defendant's responsibility for the alleged crimes.  As set forth above, with regards to Count 3 through 5, we believe the Government's only witness is Witness 1, a convicted perjurer. Moreover, there is absolutely no evidence connecting Mr. Hoey to the actions of the co-conspirator Balaban.

Secondly, since the Government is relying on allegations that occurred over two years ago, and has not set forth any other recent allegations or pointed to any potential allegation to occur in the future, we believe the Government has not carried their burden of proof that Hoey presents any danger in the future. In <u>United States vs. Madoff</u>, 586 F.Supp.2d 240 S.D.N.Y.(2009) the Court reasoned, with respect to future danger by a defendant, that "the question is not simply whether the defendant's actions can be considered obstruction, but whether there is a *serious* risk of obstruction in the future. The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." As mentioned above, in this case the Government has not set forth any potential future risks of dangerousness other than alleged incidents some two and a half years ago.

Moreover, the tragic accidental death of Kim Calo, as alleged in Count 2, occurred almost five years ago. The government alleged that the death <u>resulted from</u> the "use" of cocaine distributed by the defendant. Mr. Hoey has steadfastly denied any involvement in her accidental death. Furthermore, the autopsy report stated that the cause of death was not simply due to cocaine use, but "acute intoxication due to the combined effects of cocaine and alcohol." The report also detailed the presence of prescription drugs in the victim at the time of her death. The fact that Hoey and Calo were together for less than one hour that evening clearly raises a strong presumption that the multiple drugs and alcohol found in her system came from sources other than Hoey.

Even assuming the allegation of cocaine distribution was accurate, the presence of alcohol and other drugs raise a serious question of criminal liability for the death of Ms. Calo. Under traditional causation analysis, Ms. Calo's death did not, beyond a reasonable doubt, "result from" the use of cocaine distributed to the deceased. However, the circuits are split on what constitutes sufficient evidence of causation and whether the "results from" requirement is met by demonstrating the illegally distributed drugs were a "contributing cause" of death or whether death must have occurred from the cocaine itself.

The Supreme Court has recently granted certiorari on the question "[w]hether a person can be convicted for distribution of [controlled substances] causing the death utilizing jury instructions which allow a conviction when the [drug] that was distributed 'contributed to,' death by 'mixed [ ] intoxication,' but was not the sole cause of death of a person." Burrage v. United States, 133 S. Ct. 2049(2013). The uncertainty of criminal liability warrants substantial consideration of our bail package, and supports our request for the defendant's release.

The next factor the Court must consider is the history and characteristics of the defendant herein. As previously stated, Mr. Hoey is a respected businessman who owns and operates two large companies in Nassau and Suffolk Counties. Mr. Hoey is the Chief Operating Office of both companies and employs approximately 50 employees. His presence is critical to the day to day operations of said businesses, and without him, there is a real danger that those business will falter substantially. In a case where the evidence is strictly circumstantial and not overwhelming, we respectfully submit that it would be an injustice to detain Mr. Hoey for 6-9 months and allow the businesses to fail only to have a potential acquittal of all charges.

III. **Proposed Bail Package**:

The defense is prepared to put forth at least five financially responsible people and numerous pieces of property which has an approximate combined net equity value in excess of seven million dollars. Mr. Hoey's mother, father, wife, sisters and brother-in-law are prepared to sign a bond and post their homes as collateral for any bond

set by the Court. All of the potential sureties were interviewed by Pre-trial Services officer who has recommended that bail be set. All of the proposed properties are in the New York area and most are the primary residences or the business properties of the sureties and or defendant. The fact that as many as five people are willing to come forward and subject their residences to forfeiture on behalf of Mr. Hoey is an extremely strong argument that he does not pose a risk of flight or a danger to the community.

In addition to the posting of significant collateral there are conditions or a combination of conditions that can be imposed to insure that Hoey does not present any danger to the community or potential witness. As stated above, crucial to his and his families livelihood is the two companies he runs. As such, we propose that Hoey can be placed on house arrest with electronic monitoring and or an electronic bracelet. He will only be allowed out of the home to work.[4] Furthermore, we submit that additional conditions can be put in place, if necessary, that can monitor all phone activity by Mr. Hoey (the use of a pen register which allows the government to monitor all outgoing and incoming calls) and that the phone activity be limited to work and family period.

We respectfully submit that based upon the case law that favors the presumption of release, the lack of any credible evidence that he poses a future danger to the community combined with the very substantial (substantial not only in value but the amount of people signing) bail package that is being submitted, it is respectfully that a reasonable bail be set in this case.

Respectfully Submitted,
/s/ Joseph R. Conway
/s/ Robert P. LaRusso
Joseph R. Conway, Esq.
Robert P. LaRusso, Esq.
Attorneys for Thomas Hoey

cc: AUSA's Margaret Garnett
    Ian McKinley

---

[4] A modified scheduled can de affixed to allow him to work a set number of hours on a daily basis.

9