# LaRusso & Conway, LLP

300 Old Country Road
Suite 341
Mineola, NY 11501
Tel: (516) 248-3520 • Fax: (516) 248-3522

February 5, 2014

Hon. Judge P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York

Re:   United States v. Thomas Hoey Jr.
      Criminal Document No. CR-11-337S-3(PKC)

Dear Judge Castel:

This letter motion is respectfully submitted seeking reconsideration of the Court's December 20, 2013 and January 6, 2014 bail rulings that ordered Mr. Hoey detained without bail pending trial[1]. We respectfully submit that based upon recent developments, Mr. Hoey is entitled to a reasonable bail. We request the Court to take into consideration our December 20, 2013 bail argument, as well as our December 30, 2013 letter for reconsideration.

## I. New case law with respect to the narcotics counts

The government's request for detention was mostly premised upon the grounds that both Counts One and Two of the Indictment carry mandatory minimum sentences of twenty years. The government's focus on both counts has been on the death of Kim Calo. The Supreme Court has recently issued a decision that makes a conviction under Count Two more difficult for the government. On January 27, 2014 the Supreme Court, in Burrage v. United States, 2014 WL 273243 at *9, held that

---

[1] We had filed a notice of appeal from the January 6th, 2013 denial of our motion for reconsideration. That appeal has been withdrawn at this time.

"at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. Section 841(b)(1)(C) unless such use is a but for cause of death or injury."

Ms. Calo's autopsy report stated that the cause of death was not merely due to cocaine use, but "acute intoxication due to the combined effects of cocaine and alcohol." The report also detailed the presence of prescription drugs in the victim at the time of her death. The fact that Hoey and Calo were together for less than one hour the evening of Calo's death raises a strong presumption that the myriad drugs and alcohol found in her system came from sources other than Hoey. In fact cocaine residue inside a plastic bag found in Ms. Calo's bag strongly supports our position that the victim had ingested cocaine before arriving at the hotel. Even assuming the allegation of cocaine distribution (Count One) was accurate, (and we note the complete lack of evidence proffered by the Government with respect to this Count) the presence of alcohol and other drugs raise a serious question of criminal liability for the death of Ms. Calo. Under both traditional causation analysis and the Supreme Court's ruling in Burrage, Ms. Calo's death was not, beyond a reasonable doubt, "a but-for result" from Hoey's alleged distribution of cocaine.

Furthermore, as it relates to the strength of the government's case as to Count Two, the New York City Police Department in conjunction with the Manhattan District Attorney's Office performed a nine month investigation into Calo's death and brought no charges. The investigation was picked up by the Drug Enforcement Administration and the United States Attorney's office based upon the fact that the victim was related to a Drug Enforcement Agent. At hearings held before the Honorable Judge Sidney Stein earlier this year, testimony was elicited that former Agent Arthur Anderson (the brother of the victim and a former Special Agent in Charge at Long Island DEA Office) has been in contact with the agents on this investigation.

Accordingly, we submit that the above factors be considered under 18 USC 3142(g), specifically (1) the nature and circumstances of the charged offense, and (2) the weight of the evidence against Hoey, and that such factors weigh in favor of Mr. Hoey receiving bail.

In addition, the Supreme Court's holding in Burrage mitigates this Court's determination that "the motive to flee is quite different as matters

stand today," due to the "prospect of a sentence of twenty years or more if convicted of [the narcotic crimes]." (December 20, 2013 Hearing p.29) In fact, Hoey's motivation to flee is now less, based upon the lesser prospect of his conviction under Count Two.

With respect to Hoey's motivation to flee, the government offered the argument that Hoey had been in possession of large amounts of cash and that he traveled regularly to South and Central America. (December 20, 2013 Hearing Pages 9-11) However, such travel related to his business - he traveled to fruit producing regions because he distributed fruits in the United States. The cash constituted business proceeds that he often personally deposited in a bank. The government also set forth that Hoey owned property in Aruba; this property is a two-week time share utilized by his family. In all, Hoey is not a flight risk, as set forth more fully in pages 5-7.

## II. The obstruction counts

Admittedly, "[o]bstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000); see also, United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) (Obstruction of justice held to be an "alternative ground for detention," apart from risk of flight and safety to the community).

As set forth in Counts 3 through 5 of the Indictment, the Government alleges that Hoey participated in a scheme to obstruct the investigation by "procuring" Witness 1 to commit perjury (Count 3), attempting to destroy evidence (Count 4) and threatening, pressuring and inducing Witness 1 to make false statements to law enforcement agents, to give false testimony before a grand jury and sign a false statement for future use in an official proceeding (Count 5). Although a grand jury may have found probable cause under the law, Mr. Hoey has pleaded not guilty and is presumed innocent of these charges. Based upon these charges and the evidentiary proffer at the bail hearing, the government moved to detain Mr. Hoey under §3142(f) alleging that Mr. Hoey posed a "serious risk" to obstruct or attempt to obstruct justice and threaten, injure, or intimidate a prospective witness. This Court determined that "the concern that I have is that such conduct may continue or occur in this case, which would be a matter of grave concern." (December 20, 2013 Hearing pp.29-30).

We submit that the government's proffer failed to prove by "clear and convincing" evidence that Mr. Hoey posed such a serious risk to the prosecution of this case. As the Second Circuit held in United States v. Madoff, the critical inquiry

"is not simply whether [the defendant's] actions can be considered obstruction, but whether there is a serious risk of obstruction in the future. The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibitive behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." 586 F.Supp.2d at 250. (emphasis added).

Here, there has been little showing of a possibility of serious risk of future obstruction. The obstruction allegations set forth in the Indictment allegedly occurred in April and May of 2011, over two and a half years ago. The Government did not proffer any other additional allegations of obstruction of justice, and certainly nothing that has happened since May of 2011.

At the December 20, 2013 hearing, the government, in attempting to show evidence of "more recent" obstructive conduct by Hoey, heavily relied upon Mr. Hoey's pending state case, stating

"Almost nothing was said [by defense counsel] that addresses the government's point about the... allegations of obstructive conduct and tampering with witnesses that have been made in the state case which is more recent conduct and has been fully presented to...the State judge." (December 20, 2013 Hearing p.28) (emphasis added)

Such conduct occurred in 2009-2010 and was therefore patently not "more recent," despite what was claimed by the government. In addition, no such evidence has been "presented to the State judge." The People have filed a motion, commonly referred to as a Molineux motion (similar to a Fed R. Evid 404(b) motion) alleging such conduct. As to this "obstructive conduct" cited by the Federal prosecutors, the Molineux motion is devoid of any allegation of obstructive conduct except for a claim that Hoey called the victim's cousin after the cousin had made a 911 call thinking the victim was in trouble.[2] The evidence tampering allegation in the State case relates

---

[2] In addition, the government proffered to this Court that the State Court presented evidence that Hoey had violated an Order of Protection in that case. Yet the People's only claim (substantiated

to a neighbor's belief that Mr. Hoey was removing evidence of blood stains in front of his apartment door. However at a pre-trial hearing, Police Officer Kamal Williams testified that upon his arrival at the apartment he observed blood both in front of the apartment and on the door frame of the apartment. He also testified that he saw no evidence that any blood had been wiped up. Additionally Police did not find any evidence inside the apartment indicating that Mr. Hoey tampered with any evidence. (See Pages of Hearing Transcript – July 8, 2013, pgs 49- 50 attached hereto as Exhibit 1)

With respect to the Federal Indictment's three obstruction counts, the 18 USC 3142(g)(2) factor of the weight of the evidence against the defendant clearly militates in favor of granting bail. It is clear from the Indictment that the obstruction charges are premised principally on the cooperation and testimony of Witness 1, who, as the Court is aware from presiding over her trial, has provided a number of contradictory versions of the events surrounding the tragic death of Kim Calo, ultimately leading to her perjury conviction in February 2013. Witness 1 had been engaged in drug use with the victim before meeting up with Hoey. Witness 1 fled the premises upon learning of Ms. Calo's death, and Mr. Hoey was instrumental in persuading Witness 1 to return to speak with the police investigating her death. Only then did she seek to implicate Hoey in an attempt to shield herself from any wrongdoing.

Though only persuasive authority, we note that District Courts in other Circuits have found bail appropriate for defendants accused of witness tampering. See U.S. v. Kiff, 377 F.Supp.2d 586 (E.D.L.A. 2005) (Defendant was entitled to release pending trial, even though charged offenses included allegation of witness tampering, given that defendant had no criminal record and there was no evidence that her history or characteristics justified pretrial detention); U.S. v. Demmler, 523 F.Supp 2d 677 (S.D.Ohio 2007) (Defendant who was indicted for obstruction of justice and witness tampering did not present a danger necessitating his detention pending trial; defendant did not have a violent criminal history, there was no evidence that the charged offenses were carried out through use of violence, and there was no showing that defendant possessed dangerous weapons or had ambitions to procure them).

### III. Dangerousness grounds are rebutted by defendant's personal history and characteristics

---

only through phone records) is that Hoey called the victim a couple days after the incident. In fact, no such action happened.

Like the defendants above in Kiff and Demmler, Hoey has no criminal record, violent history or experience with dangerous weapons. However, under Counts One and Two of his Indictment, Hoey faces charges that carry minimum statutory sentence such that the charges carry a presumption of risk of flight and danger to the community. "A defendant cannot be detained as dangerous under 3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions "will reasonably assure ... the safety of the community ..." U.S. v. Dominguez, 783 F.2d 702 (7th Cir.1986). As the Seventh Circuit stated in Dominguez, "to rebut this presumption [defendants] need not necessarily show that they are not guilty of the charged crimes in the first place. They could also show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that "what is true in general is not true in the particular case ..."quoting U.S. v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Any evidence favorable to a defendant that comes within a category listed in 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in 3142(g)(3).

We believe that Hoey's personal history and characteristics, seen through the above lens, are sufficient to rebut a presumption of dangerousness and in fact militate toward the granting of bail. Mr. Hoey is a life long resident of New York whose entire family, including his two children, all reside in the metropolitan area. He has no prior criminal record and is a respected businessman, who owns and operates two large companies in Nassau and Suffolk Counties. Mr. Hoey is the Chief Operating Officer of both companies and employs approximately 50 employees. Since his incarceration on December 19, 2013, the business has steadily declined because of Mr. Hoey's absence and his inability to operate the company while incarcerated. Attached hereto (as Exhibit 2) are recent financial records attesting to the Companies reduced earnings and financial crisis.

We have also enclosed for the Court's review numerous letters from family members and employees of the companies attesting to not only the problems the business currently faces without Mr. Hoey's operation, but also describing Mr. Hoey as a reputable businessman and community patron.[3] (Exhibit 3) If Mr. Hoey continues to be incarcerated for a period of time (a trial is still many months away) the real probability is that the

---

[3] Hoey also serves on local hospital boards and is involved in numerous charitable organizations.

business will close or have to be sold in which case many if not all of the employees will become unemployed.

## IV. Bail package

The defense is prepared to put forth at least five financially responsible people and numerous pieces of property with an approximate combined net equity value in excess of seven million dollars. Mr. Hoey's mother, father, wife, sisters and brother-in-law are prepared to sign a bond and post their homes as collateral for any bond set by the Court. All of the potential sureties were interviewed by the Pre-trial Services officer who recommended that bail be set. All of the proposed properties are in the New York area and most are the primary residences or the business properties of the sureties and/or defendant. The fact that as many as five people are willing to come forward and subject their residences to forfeiture on behalf of Mr. Hoey is an extremely strong argument that he does not pose a risk of flight or a danger to the community.

In addition to the posting of significant collateral, there are conditions or a combination of conditions that can be imposed to insure that Hoey does not present any danger to the community or potential witness. As stated above, crucial to his and his families' livelihood are the two companies he runs. As such, we propose that Hoey can be placed on house arrest with electronic monitoring and/or an electronic bracelet. He would only be allowed out of the home to work.[4] Furthermore, additional conditions can be put in place, such as phone monitoring of Mr.Hoey (the use of a pen register which allows the government to monitor all outgoing and incoming calls), and conditions that such phone activity be limited to work and family.

In conclusion, we respectfully submit that based upon the case law that favors the presumption of release, the lack of any credible evidence that Hoey poses a future danger to the community, combined with the very substantial bail package that is being submitted, that a reasonable bail be set in this case.

Respectfully submitted,

cc: Margaret Garnett, Esq
    Ian McGinley, Esq.

Joseph R. Conway, Esq.
Robert P. LaRusso, Esq.
Attorneys for Thomas Hoey

---

[4] A modified scheduled can be set to allow him to work a set number of hours on a daily basis.