UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

UNITED STATES OF AMERICA          :

                                             :

          v.                      :          S3 11 Cr. 337 (PKC)
                                             :          OPPOSITION TO MOTION

THOMAS HOEY, JR.,                :

                                             :

      Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S OPPOSITION TO DEFENDANT THOMAS HOEY'S MOTION FOR REASSIGNMENT OF THE CASE

       Defendant Thomas Hoey, Jr. ("Hoey" or the "defendant") was indicted in December 2013 in a superseding indictment that charged him with one count of conspiracy to distribute five or more kilos of cocaine, one count of distribution of cocaine resulting in the death of another person, one count of a conspiracy to suborn perjury, one count of obstruction of justice, and one count of witness tampering.  With respect to the latter three counts, he was joined with co-defendant Barry Balaban, who had already been charged with similar counts in the preceding indictment in this case, S2 11 Cr. 337 (PKC).  Co-defendant Alejandro Noriega was also charged in the S3 Indictment, in the single count of obstruction of justice.  Hoey and Noriega were arrested on December 19, 2013, and the S3 Indictment was unsealed the following day in connection with their presentment and arraignment before the Honorable P. Kevin Castel.

       On February 8, 2014, Hoey filed a motion requesting that the S3 Indictment be reassigned to a different district judge by random assignment, on the grounds that the Government has violated the Local Rules for the Division of Business Among District Judges by designating the S3 Indictment as a "superseding" indictment, rather than having the S3

Indictment placed into the wheel for random assignment. The Government opposes the motion and respectfully submits that the Government's conduct in this matter has been entirely proper, and Hoey is not entitled to the relief he seeks for the following reasons: *First*, Hoey lacks standing to invoke the "Rules for the Division of Business Among District Judges" ("Local Rules"), the principal basis for his motion. *Second,* the Local Rules do not support Hoey's novel contention that a superseding indictment is proper only to facilitate a joint trial or where a motion for a joint trial has been granted in advance. *Third,* superseding indictments have been obtained frequently to promote the interests of efficiency and judicial economy in similar circumstances. And *fourth*, the Government's alleged motive for seeking a superseding indictment – which, according to Hoey, was to take advantage of this Court's perceived bias against Hoey arising from having presided over the February 2013 trial of Nicole Zobkiw – lacks any basis.

## BACKGROUND

In the early morning hours of January 10, 2009, a woman named Kim Calo died in Room 508 of the Kitano Hotel in Manhattan, and the cause of her death was later determined to have been related to the ingestion of cocaine. Two people were present in Room 508 at the time of Ms. Calo's use of cocaine and her death --- Thomas Hoey, Jr. and Nicole Zobkiw. In April 2011, Ms. Zobkiw appeared before the grand jury in this District pursuant to a subpoena seeking her testimony in connection with the federal investigation into Ms. Calo's death and related events. Ms. Zobkiw was represented at that grand jury appearance by Barry Balaban, Esq., a lawyer hired for her by Thomas Hoey, Jr. During that grand jury testimony, Ms. Zobkiw perjured herself in numerous material matters relating to her relationship with Hoey and the events surrounding Ms. Calo's death; her grand jury testimony, in general, tended to falsely exculpate Hoey for any responsibility for Ms. Calo's death. Subsequent to her testimony, Ms.

Zobkiw was indicted for perjury and obstruction of justice in connection with her grand jury testimony (in S1 11 Cr. 337 (PKC)); she was arrested in May 2012 and the case was randomly assigned to Judge Castel. In January 2013, Barry Balaban was indicted in S2 11 Cr. 337 (PKC), charging him with a conspiracy to suborn perjury, obstruction of justice, and witness tampering, all in connection with Ms. Zobkiw's April 2011 grand jury testimony. Ms. Zobkiw proceeded to trial alone on the S1 Indictment in early February 2013 and was convicted on all counts. Balaban was scheduled for trial in March 2014.

In February 2013, in connection with its ongoing investigation into obstruction and witness tampering in connection with the federal investigation of Ms. Calo's death, the Government served an *ad testificandum* grand jury subpoena upon a witness (the "Witness"). Several weeks after service of that subpoena, Hoey's counsel raised objections with the Government about the subpoena, and the Government voluntarily refrained from enforcing the subpoena while Hoey's counsel determined a course of action. After more than a month of negotiations, the Government and Hoey's counsel reached an agreement to allow the Witness' testimony on certain topics, but in May 2013 Hoey sought the advice of other counsel, withdrew from the negotiated agreement and informed the Government of his intention to file a motion to quash the subpoena to the Witness in its entirety. That motion was filed on May 31, 2013. The matter was heard by the Honorable Sidney H. Stein, in his capacity as Part I Judge, and a three-day evidentiary hearing was held in August 2013. The motion remains *sub judice* before Judge Stein. *See* Declaration of AUSA Margaret Garnett ("Garnett Decl."), attached hereto as Exhibit A, paragraphs 3-6.

In mid-December 2013, the Government sought and obtained the S3 Indictment from the grand jury, which expanded the time period of the pending perjury conspiracy,

3

obstruction, and witness tampering charges against Balaban, added Hoey as a defendant in each of those counts, added Noriega as a defendant in the obstruction count, and added narcotics distribution charges against Hoey (a conspiracy involving five kilograms or more of cocaine, and a substantive distribution charge resulting in another person's death).  Hoey and Noriega were arrested on December 19, 2013, and arraigned on the S3 Indictment the following day.  Balaban entered a guilty plea to the conspiracy to suborn perjury count, as charged in the S3 Indictment, on January 14, 2014.

                                    ARGUMENT

I.      Hoey Lacks Standing To Invoke The Local Rules

As a threshold matter – one which Hoey fails to address in his motion – he has no standing to invoke the Court's Rules for the Division of Business Among District Judges. Indeed, the very first sentence of those rules states: "These rules are adopted for the internal management of the case load of the court and *shall not be deemed to vest any rights in litigants or their attorneys. . . .*"  Preamble (emphasis supplied);  *see also United States* v. *Davila–Bajana*, 172 F.3d 38, 1998 WL 964193 (2d Cir.1998) (table) (complaint about reassignment of case under Eastern District assignment rules "legally baseless," given their identical provision that "[t]hese rules are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys"); *Chevron Corp.* v. *Donziger,* No. 11 Civ. 691 (LAK), 2011 WL 979609 (S.D.N.Y. 2011) ("Donziger's motion is based entirely on the Court's [Rules for the Division of Business] . . . as [these rules] clearly state, and as both the Second Circuit and this Court have held, no litigant would have any right to reassignment even if there had been a departure from the [rules]."); *Latino Officers Assoc. of New York, Inc.* v. *City of New York*, No. 99 Civ. 9568 (LAK), 2000 WL 1030623, at *1 (S.D.N.Y. July 26, 2000) (finding

motion seeking to transfer case to another judge pursuant to the Court's internal rules "without basis" because rules conferred no rights on litigants); *Baker* v. *Dorfman*, No. 99 Civ. 9385 (DLC), 2000 WL 1010285, at *9 (S.D.N.Y. July 21, 2000) (holding that litigants had no standing under Rule 15 of the Rules for the Division of Business Among District Judges); *Nixon* v. *Diehm*, No. 99 Civ. 9843 (KMW) (THK), 2000 WL 280009, at *2 (S.D.N.Y. Mar. 14, 2000) ("The Rules do not vest the individual parties with any substantive rights."); *accord United States* v. *Gonzalez*, 421 F. Supp. 2d 727, 732 (S.D.N.Y. 2006), *rev'd on other grounds*, 291 Fed. Appx. 392 (2d Cir 2008) (table). Hoey's application should be rejected on this basis alone.[1]

II. The Superseding Indictments Complied With The Local Rules

Even assuming *arguendo* that Hoey has standing to assert a violation of the Local Rules, his motion fails on the merits, as the Government's superseding indictment was entirely consistent with the Local Rules. Under Local Rule 6(e), a superseding indictment is properly assigned to the same judge to whom the original indictment was assigned. Because this rule plainly compels rejection of Hoey's motion, he attempts to dodge its application by asserting, in a novel reading of Local Rule 13(b), that a superseding indictment is proper only where there is a "possibility of a joint trial." (Hoey Motion at 6-8). This argument is meritless both legally and factually.

Although the Local Rules do not define the term "superseding indictment," a number of courts have recognized that the Government may "elect to proceed on any pending indictment, whether it is the most recently returned superseding indictment or a prior indictment." *United States* v. *Hickey*, 580 F.3d 922, 930 (9th Cir. 2009); *see also United States* v. *Walker*, 363 F.3d

---

[1] Even if Hoey had standing to argue that the S3 Indictment should have been assigned to a different judge, which he does not, he certainly has no standing to press a claim that the S2 Indictment, charging Barry Balaban, should have been assigned to a different judge under the local rules. The alleged improper assignment of the S2 Indictment forms a key part of Hoey's motion.

711, 715 (8th Cir. 2004) (both a superseding indictment and the original indictment remain pending and the government may proceed to trial on the original indictment); *United States* v. *Vavlitis*, 9 F.3d 206, 209 (1st Cir. 1993) (an original indictment remains pending and can be used at trial even if a superseding indictment omits an element of a charged offense).  Moreover, various commonly accepted practices in this district further confirm that a superseding indictment need not "replace" or "annul" a prior indictment.  For example, at sentencing proceedings, the Government routinely dismisses earlier-filed indictments precisely because those previously filed charges have not been voided by the filing of superseding indictments.  To take another example, in multi-defendant indictments where all the defendants may not be arrested simultaneously, the Government regularly obtains (1) a single indictment naming all defendants; and (2) superseding indictments naming each individual defendant, so that only the indictments with defendants who ultimately have been arrested are unsealed.  But in no way do the superseding indictments against individual defendants void the underlying multi-defendant indictment in which all the defendants had been named.  In short, neither the Local Rules nor the long accepted practices of this District supports Hoey's premise that the indictment should not be considered a "superseding indictment" under Rule 6(e).

The thrust of Hoey's argument, however, is that Local Rule 13(b) engrafts upon Rule 6(e) the condition that a superseding indictment may be obtained only where there is a "possibility of a joint trial." (Hoey Motion at 6-8).  In so doing, Hoey confuses the concept of "related cases" under Local Rule 13(b) with "superseding indictments" under Local Rule 6(e).  But neither the plain meaning nor the purpose underlying Local Rule 13(b) supports Hoey's argument. Local Rule 13(b), which is part of a broader rule governing the "Transfer of Related Cases," provides, in pertinent part:  "Criminal cases are not treated as related to each other unless

a motion is granted for a joint trial." Based on this rule, Hoey somehow leaps to the conclusion that a superseding indictment is authorized or proper only where there is a "possibility of a joint trial." The rule simply does not say so. Rather, it provides that separately pending criminal cases should not be marked or deemed as "related" to each other – and thus transferred, pursuant to the procedure for "related cases" under Local Rule 13(c), to a single judge "for consolidation or coordinated pretrial proceedings" – unless the Court first grants a motion for a joint trial.

This Local Rule logically follows from Federal Rule of Criminal Procedure 13, which states: "The court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Both Local Rule 13(b) and Federal Rule 13 provide for a procedure by which *separate* indictments may be joined or consolidated for pre-trial or trial purposes. *See generally* Wright & Miller, 1A Fed. Prac. & Proc. Crim. § 216 (4th ed.) ("Under certain conditions Rule 13 allows courts to order that separate cases be tried together. The court may hold a single trial for a single defendant who has been charged in more than one indictment or information, or for multiple defendants who are charged in separate pleadings. Rule 13 grants this authority when the various charges or defendants could have been joined originally in a single indictment or information."). But neither rule – either by its plain terms or its underlying purpose – limits the obtaining of superseding indictments to cases where there is a "possibility of a joint trial," a requirement which Hoey invents by superimposing the "related case" procedure of Local Rule 13(b) upon the entirely distinct procedure for superseding indictments under Local Rule 6(e).

Indeed, to read both Local Rules in the manner that Hoey proposes would produce absurd results. It would mean that the Government could not add a new defendant to a case through a

7

superseding indictment – which, in Hoey's parlance, would be considered a "related case" – unless a motion is first "granted for a joint trial," Local Rule 13(b). Neither the Local Rules nor the Federal Rules of Criminal Procedure contemplate such a requirement.[2] Likewise, Hoey's lengthy argument about joint trials completely ignores the self-evident fact that an assessment of judicial efficiency and conservation of judicial resources with respect to criminal cases concerns more than merely trials. For all of these reasons, Hoey's novel interpretation of the Local Rules should be rejected.

Moreover, even if Hoey *were* correct and the Local Rules required the possibility of a joint trial before defendants could be added to an existing case in a superseding indictment, the superseding indictments in this case would still fall within Hoey's desired interpretation of the Local Rules. While it is true that Balaban was indicted shortly before Zobkiw was scheduled to begin trial, that trial had not yet begun and it would certainly have been possible for the two defendants to have been joined for trial, as the proof against them was nearly identical, had either defendant desired a joint trial. Neither defendant requested a joint trial and so the question of a joint trial was never placed before the Court.[3] More to the point, of course, is that a joint trial of Hoey and Balaban would certainly have been possible at the time of Hoey's indictment in mid-December. Balaban had not yet pled guilty, and indeed no formal plea offer had yet been made by the Government. *See* Garnett Decl. at paragraph 9. Although the Government and Balaban's counsel had numerous discussions of a possible disposition regarding the case, it was not clear as of mid-December whether or when Balaban would in fact plead guilty, and under what

---

[2] Perhaps in an attempt to avoid such an illogical result, Hoey tries to construe the rule – which precludes treating cases as related to each other "unless a motion is *granted* for a joint trial" – to require only the "*possibility* of a joint trial." (emphasis added). But that is of course not what the rule states.

[3] Of course, as discussed below, superseding Balaban into the Zobkiw case was proper as a factual and procedural matter regardless of the possibility or likelihood of a joint trial.

circumstances, and certainly no plea had yet been entered or even scheduled. The March 7, 2014 trial date that had been set for Balaban could have been adjourned to allow for a joint trial (as is common in this District when new defendants are added in a superseding indictment), or the Court could have required Hoey to proceed to trial on March 7 as well, since doing so would be within the time limitations provided by the Speedy Trial Act. In any event, Hoey's wholly speculative claims about the impossibility of a joint trial, based on his interpretation of the status of the Government's plea discussions with another defendant and his predictions about the outcome of hypothetical severance motions, should be rejected --- even if they had any bearing on the outcome of the motion, which they do not.

    III.    <u>The Superseding Indictments Are In the Mainstream of Practice in This District</u>

Hoey was superseded into an indictment where he was joined with another defendant, already indicted on three of the five counts in the S3 Indictment. This situation is one that is plainly contemplated by both the Federal Rules of Criminal Procedure and the Local Rules of this District, and is well within the mainstream of accepted practice. Indeed, there are numerous examples in which the Government has proceeded by way of a superseding indictment without first moving for a joint trial under Local Rule 13(b), including under circumstances where no joint trial was possible or even remotely likely. These include:

- *United States* v. *Khalid Sheikh Mohammed, et al.,* S14 93 Cr. 180 (KTD) (the "9/11 Indictment"). In this indictment, the Government charged five defendants for their participation in the 9/11 plot. The original indictment in the case, which involved the first World Trade Center ("WTC") bombing, was obtained 16 years earlier, in 1993. Subsequent to the first indictment, the Government obtained 14 superseding indictments, including ultimately the 9/11 Indictment. In 2009, at the time the Government obtained

the 9/11 Indictment, all but one of the ten defendants indicted to that point had been convicted. The remaining defendant, Abdul Rahman Yasin, had been a fugitive since 1993 and had been charged only in connection with the first WTC bombing.[4] Thus, at the time the Government obtained the 9/11 Indictment, it had not made a motion for a joint trial under Local Rule 13(b), and the only possibility of a joint trial with a currently charged defendant was with Yasin, a defendant who had been a fugitive for the past 16 years and who had been charged in connection with a different plot.

- *United States* v. *Bin Laden et al.*, S13 98 Cr. 1023 (LAK). In the underlying indictment in this case, the Government charged numerous defendants for their roles in, among other things, al Qaeda's attacks in August 1998 on the United States Embassies in Dar es Salaam, Tanzania, and Nairobi, Kenya. Last year, and almost 15 years after the original indictment, the Government obtained a superseding indictment against Sulaiman Abu Ghayth, charging him with conspiring to kill Americans from May 2001 to 2002. At the time the Government obtained the superseding indictment against Abu Ghayth, it did not first make a motion for a joint trial under Local Rule 13(b) relating to any prior indictments in the case, which concerned, among other things, the plots to attack the U.S. Embassies or the USS Cole in Yemen.

- *United States* v. *Cameron Douglas, et al.*, 09 Cr. 1082 (RMB). In 2009, the Government charged two defendants, Cameron Douglas and Kelly Sott, for distributing methamphetamine in New York. Both Sott and Douglas pled guilty to informations. Sott and Douglas were sentenced on March 16, 2010 and April 20, 2010, respectively. On

---

[4] Khalid Sheikh Mohamed also had been named in the S13 indictment for his role in the so-called Bojinka plot, which contemplated bombing airliners. The Government ultimately dismissed the 9/11 Indictment in favor of prosecution before a military commission.

July 10, 2010, the Government filed a superseding indictment naming the two suppliers from whom Douglas and Sott had obtained the narcotics they distributed in New York.

- *United States* v. *Igor Levin, et al.*, 10 Cr. 31 (SHS). Igor Levin and Yevgeny Shvartsshteyn were indicted on securities and wire fraud charges in January 2010. Those charges related to various misrepresentations that they made in connection with their operation of a hedge fund called A.R. Capital Global Fund, L.P. On December 1, 2010, in anticipation of their guilty pleas, a superseding information was filed charging Levin and Shvartsshteyn with wire and mail fraud charges based on substantially the same alleged conduct set forth in the original indictment. Immediately thereafter, on December 1 and 2, 2010, Levin and Shvartsshteyn pled guilty to the charges in the information. Approximately 11 days after those guilty pleas, on December 13, 2010, a superseding indictment was filed charging two new defendants, William Shternfeld and Benjamin Koifman, with securities, wire and mail fraud charges based on their participation in the same fraudulent scheme at the same hedge fund.

- *United States* v. *Scott Sullivan*, 02 Cr. 1144 (BSJ). In 2002, the Government charged CFO Scott Sullivan in connection with his role in an accounting fraud at WorldCom. On March 1, 2004, the Government obtained a superseding indictment in which it added CEO Bernie Ebbers. The very next day, Sullivan, who had been cooperating with the Government, pled guilty to that superseding indictment pursuant to a cooperation agreement. At the time the Government obtained the superseding indictment on March 1, 2004, (a) it had not made a motion for a joint trial; and (b) Sullivan was scheduled to plead guilty the following day, rendering a joint trial exceptionally unlikely.

11

To be sure, as Hoey's submission references, there are other examples of cases in which the Government did not proceed through a superseding indictment. But in this case, and consistent with the above-described examples, the circumstances provide a compelling basis for proceeding against Hoey through a superseding indictment. The course of criminal conduct depicted in the S3 Indictment is inextricably intertwined with the crime that formed the basis for the initial indictment in this case – the perjury of Nicole Zobkiw in the grand jury investigating the death of Kim Calo on January 10, 2009. In addition, Hoey is charged with the same crimes that his co-defendant Barry Balaban was charged with in the S2 Indictment. Hoey's trial will involve many of the same witnesses and evidence from the Zobkiw trial (although of course, given the more extensive nature of the charges, there will be many more witnesses at any trial of Hoey on the S3 Indictment). Hoey seeks to minimize these similarities by pointing to the drug distribution charges that make up Counts One and Two of the S3 Indictment, but are not charged in the prior indictments. What Hoey ignores, of course, is the fact that the charge in Count Two, and a portion of the charge is Count One, is the very crime that is the motive for, and is the subject matter of, what the S3 Indictment alleges as conspiracy to suborn perjury, obstruction of justice and witness tampering. Indicting Hoey in a superseding indictment under these circumstances is plainly proper, is in the interests of conserving judicial and other resources, and is well within the mainstream of practice in this District.

IV.   The Nefarious Motive Ascribed By Hoey To The Government Is Baseless.

Hoey's entire motion is premised on the underlying supposition that the Government sought a superseding indictment as part of some grand scheme to find any way to have Hoey's case presided over by Judge Castel. This assertion is both logically and factually baseless.

First, it is not clear what Hoey claims could be motivating the Government's supposed improper scheme. The only motive proffered is a claim early in Hoey's motion regarding the Government's supposed desire to have Hoey's case heard by the judge who presided over the Zobkiw perjury trial, because of the way that Hoey believes he was portrayed in that trial. (Hoey Motion at 2). This claim is wholly illogical. Hoey's motion is premised on an argument that the S3 Indictment was improperly assigned because the S2 Indictment (charging Balaban alone) was improperly assigned. But of course the S2 Indictment was returned (as assigned to Judge Castel as a superseding indictment) *before* the Zobkiw trial had even started, and thus *before* Judge Castel had heard any of the evidence in that trial. Moreover, Judge Castel was of course not the trier of fact in the Zobkiw perjury trial, which was tried to a jury, and so had no occasion to express any opinion whatsoever about the nature of the evidence presented in that trial or the factual conclusions supported by that evidence, with respect to Hoey or to anyone else. Hoey can point to no issue --- no legal ruling, no remark about the facts or evidence, no record of sentencing other defendants in the case --- decided by Judge Castel in proceedings prior to the S3 Indictment that could possibly support a view that he has demonstrated a bias either in favor of the Government or against Hoey in this case, and the Government is aware of none.[5]

Second, Hoey's portrayal of the circumstances concerning the judicial assignment of his pending motion to quash a grand jury subpoena in the Government's underlying investigation is inaccurate. Hoey claims that the Government intended to file a motion to compel the Witness'

---

[5] Rather, it is the defense who has made a concerted effort to try to remove Hoey's case from anyone with knowledge of it at all. In the matter pending before Judge Stein, he is currently seeking to disqualify both of the AUSAs who are knowledgeable about the Hoey investigation, as well as the case agent and several other agents who have worked on the investigation. And now he is seeking to remove the case from Judge Castel, on the apparent ground that Judge Castel is too familiar with certain of the facts of the case.

13

testimony in an effort to get the matter decided by Judge Castel (Hoey Motion 2-3); in reality, the Government has no control over which judge hears a grand jury-related matter, and all that occurred was that, in response to a query from defense counsel, the Government stated that the matter would likely be heard either by the Part I Judge or by Judge Castel (because it was related to an indicted case pending before him) (*see* Garnett Decl. at paragraph 6). This offhand remark was simply a statement of fact, and not of any preference or scheme on the part of the Government. When the Government filed its opposition to Hoey's motion to quash the subpoena to the Witness, we informed Judge Castel of the pending motion in a letter, pursuant to Local Criminal Rule 1.1, advising him that there was a dispute on a grand jury matter that was related to the indicted case then pending before him. *See* Garnett Decl. at paragraph 7-8 and June 17, 2013 Letter to Judge Castel, attached as Exhibit B. Contrary to Hoey's claim, that letter did not request that Judge Castel hear the motion to quash, nor attempt to assign that motion to Judge Castel. Rather, the letter plainly states: "The parties have agreed that Hoey's Reply brief will be filed on June 27, 2013, when it appears from the Court's published schedule that the Honorable Sidney H. Stein is assigned as the Part 1 Judge. Although such motions involving supervision of the grand jury are often resolved by the judge who is on Part I duty when the briefing is completed, we bring these facts to Your Honor's attention so that Your Honor and Judge Stein may determine where and how this matter would most efficiently be resolved." (Exhibit B). The Government took no position whatsoever on which judge should hear the motion to quash, and certainly raised no objection to Judge Stein presiding over the motion. Nor have we made any effort whatsoever to "transfer" a *sub judice* matter from Judge Stein to Judge Castel, as the defense alludes to in their motion (Hoey Motion at 4), nor is the Government aware of any mechanism by which such transfer could or would be accomplished.[6]

---

[6] The Hoey Motion also suggests that the S3 Indictment is improper for an additional reason – because it

14

For all of the foregoing reasons, Hoey's allegation that the Government manipulated the assignment system or acted in any improper fashion is utterly unfounded. It was entirely appropriate and sensible for the Government to proceed by way of a superseding indictment in this case, and Hoey's motion for reassignment of the case should be denied in all respects.

Dated: New York, New York
February 18, 2014

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

                                         _s/Margaret Garnett
                                        Margaret Garnett
                                        Ian McGinley
                                        Assistant United States Attorneys
                                        (212) 637-2200

---

was obtained while the motion to quash and to disqualify the prosecution team was still pending before Judge Stein. As the Government previously informed Judge Stein, the Government did not rely on any disputed material in its presentation to the grand jury that indicted Hoey, and Judge Stein has determined that no court action is appropriate at this time. The Government is well-aware that, in the event Judge Stein grants the defendant's motion to disqualify the present prosecution team, there will likely be litigation over whether that presentation was impermissibly tainted, and that issue was discussed with appropriate supervisory personnel at the U.S. Attorney's Office before proceeding. In addition, as the defense plainly knows, the statute of limitations on Count Two was about to expire in early January 2014, and thus the Government had little choice but to proceed to indict Hoey on at least that Count prior to final resolution of the pending motion to quash.