UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

                 v.                            Docket No. 11-337(S-3)(PKC)

THOMAS HOEY,                          **<u>NOTICE OF MOTION</u>**

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PLEASE TAKE NOTICE THAT, upon the annexed affirmation of Joseph R.

Conway, Esq., dated March 31, 2014, and the accompanying Memorandum of Law, the

defendant Thomas Hoey will move this Court before the Honorable Kevin P. Castel, at the

Daniel Patrick Moynihan, United States Courthouse, 500 Pearl Street, New York, New York,

10007-1312, for the following relief:

1. Dismissal of Count Two of the indictment pursuant to Rule 12(b)(3)(B) of the
   Federal Rules of Criminal Procedure ("FRCP");

2. Suppression of physical evidence pursuant to the Fourth Amendment;

3. Severance of Count One from the indictment pursuant to FRCP Rule 14;

4. Bill of Particulars and production of all reports of any scientific test pursuant to
   FRCP Rule 7(f) and Rule 16(a)(1)(F) respectively; and,

5. For such further relief deemed just and proper by this Court.

Dated: Mineola, New York
March 31, 2014

Respectfully submitted

/s/ *Joseph R. Conway*
Joseph R. Conway
**Attorney for Thomas Hoey**
LaRusso & Conway, LLP
300 Old Country Road
Mineola, New York 11501
(516) 248-3520
jconway@larussoandconway.com

cc:     **Margaret Garnett**
        U.S. Attorney's Office, S.D.N.Y. (SA-CR)
        One Saint Andrew's Plaza
        New York, NY 10007
        (212) 637-2520
        Email: margaret.garnett@usdoj.gov
        (via ecf)

        **Ian Patrick McGinley**
        United States Attorney Office, SDNY
        One Saint Andrew's Plaza
        New York, NY 10007
        (212) 637-2257
        Email: patrick.mcginley@usdoj.gov
        (via ecf)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

               v.                            Docket No. 11-337(S-3)(PKC)

THOMAS HOEY,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# THOMAS HOEY'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF DEFENDANT'S PRETRIAL MOTIONS</u>

Joseph R. Conway
Attorney for Thomas Hoey
LaRusso & Conway, LLP
300 Old Country Road
Mineola, New York 11501
(516) 248-3520
jconway@larussoandconway.com

## RELIEF SOUGHT

Defendant Thomas Hoey ("defendant" or "Hoey") moves for an order (i) dismissing Count Two of the indictment pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure ("FRCP"); (ii) suppressing physical evidence seized from the vehicles owned by Mr. Hoey's company pursuant to Mr. Hoey's Fourth Amendment rights; (iii) severing Count One of the indictment pursuant to FRCP Rule 14;  and (iv) ordering the government to furnish a Bill of Particulars and provide reports of any scientific test pursuant to FRCP Rule 7(f) and Rule 16(a)(1)(F), respectively.

Relevant facts and exhibits are set forth in the accompanying affirmation of Joseph R. Conway Esq.("Conway Aff.")

## PRELIMINARY STATEMENT

In the early morning hours of January 10, 2009, Kim Calo ("Calo") died following a night of drug and alcohol abuse. The autopsy report determined that her death was an "accident" caused by an "acute intoxication due to the combined effects of cocaine and alcohol." (See Conway Aff. at ¶ 5). The autopsy's forensic toxicology report also confirmed the presence of an assortment of other drugs present in the victim.

The initial investigation into Calo's death was conducted by the New York City Police Department. Search warrants were obtained based upon a supporting affidavit containing statements from several witnesses, including Calo's companion Nicole Zobkiw ("Zobkiw") and Hoey's chauffer Alejandro Noreiga

("Noriega") (See Conway Aff. at ¶ 12). The witnesses claimed that i) Hoey "produced a quantity of cocaine from a dark-colored gym bag . . . set the cocaine on a table in the hotel room, and [Zobkiw], Calo and Hoey all ingested said cocaine"; (ii) after Calo became ill, "Hoey proceeded to remove the cocaine from the above-referenced table; and (iii) Hoey then instructed Noriega to take the "dark colored gym bag away." Noriega also told investigators that he "carr[ied]" the gym bag into a white 2005 Lincoln Town Car, New York License Plate DFY9960 ("Lincoln Town Car"), and later transferred the gym bag into the trunk of a black Chrysler with New York License Plate DYU 6320 ("Chrysler"), located at Hoey's company, Long Island Banana Corporation, at 28 William Street, Lynbrook, New York. Noriega then "re-entered" the Lincoln Town Car, and drove home to his basement apartment located at 190 Harvard Street, Hempstead, New York. Based upon these facts, warrants were obtained to search Noriega's residence and the vehicles, which belonged to Mr. Hoey's company and were utilized by the defendant. (See Conway Aff. at ¶ 19)

Without any factual support, the affidavit also sought, and the warrant granted, permission to search for and seize numerous boiler-plate items, including other evidence of the possession and distribution of cocaine, even though the affidavit claimed that "there was reasonable cause" only to believe the crimes under investigation were "possession of cocaine and conspiracy to commit that crime." (See Conway Aff. at ¶ 12) Among the unsupported items that were never described in the supporting affidavit were

> "paraphernalia used to process and distribute the drug,
> including . . . dilutants and scales, records and

documents   reflecting drug transactions in any format
including . . . stored electronic communications, data,
information and images contained in computer disks, CD
ROMs and hard drives, and counter-surveillance
equipment including . . . cameras, audio microphones,
monitors, remote buzzers, whistles, and alarms, and
scanners . . . electronic communication equipment
including . . . telephone bases and handsets, cellular
telephones, answering machines, paging devices . . .
evidence of ownership and use of the targeted premises .
. . including keys, telephone bills, utility bills, bank
statements, leases, deeds, or rent receipts . . . mail
addressed to or from the target premises . . . identification
bearing the name or photograph of any person,
telephone-books, address books, date books, calendars,
personal papers, tooth and hair brushes, and videotapes
and photographs of persons."

((See Conway Aff. at ¶ 12); Exhibit E ¶¶ 2a-c))

Without any justification for the search and seizure of the above listed items,
the state court found reasonable cause to believe that the enumerated property
mentioned above, "which is evidence of illegal drug possession, may be found at
[Noriega's residence,] and inside of a white 2005 Lincoln Town Car...; and inside
of a black Chrysler...; and inside of a dark-colored gym bag."   (See Conway Aff.
at ¶ 19)

On January 13, 2009, the warrant was executed, and searches were conducted of Noriega's residence and the two vehicles. Police property invoices listed the items recovered, and among the items recovered from the white Lincoln Town Car were plastic and zip lock bags containing cocaine and MDMA (commonly referred to as ecstasy), and a black carry bag containing clothes and a clock radio.  See Conway Aff. at ¶¶ 15-16; Exhibit G). From the black Chrysler's front console, plastic bags containing cocaine were recovered.  See Conway Aff. at ¶¶ 13-14; Exhibit F)

During the investigation, law enforcement also recovered Calo's purse which contained a "red glassine" envelope containing a residue, subsequently analyzed to be cocaine. (See Conway Aff. at ¶ 9; Exhibit D)

After months investigating Calo's death, New York State authorities failed to bring any charges against Hoey. After a number of months, the federal authorities assumed responsibility for the criminal investigation of her death. Calo was the sister of Arthur Anderson, a supervisory DEA agent on Long Island. Prior to the filing of the Indictment herein, the defendant filed a motion regarding the service of a grand jury subpoena on Hoey's attorney's investigator. That motion also sought the disqualification of the prosecutors based on their receipt of the investigator's file which contained attorney-client privileged documents. A hearing was held in July and the early part of August on that issue and Judge Stein has reserved decision. There has been no decision to date.

On  December 12, 2013, Hoey was indicted and charged with drug distribution (Count 1) causing the death of Kim Calo (Count 2) and obstruction (Counts 3-5). (See Conway Aff. at ¶ 4; Exhibit A)

**POINT ONE:  Count Two should be dismissed because
of the Supreme Court's recent holding in <u>United States v Burrage</u>**

Count Two invokes the penalty enhancement provision of the Controlled Substances Act. It alleges that Hoey "intentionally and knowingly did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. 841(a)(1)," and goes on to state that "the use of such controlled substance resulted in the death of Kim Calo, on or about January 10 2009, in the Kitano hotel in Manhattan, New York."

However, the Supreme Court recently addressed the interpretation of the Controlled Substances Act's death enhancement provision such that the government will be unable to establish Hoey's criminal liability, thus mandating Count Two's dismissal. In <u>United States v Burrage</u>, 2014 WL 273243 at *9, the Supreme Court held that

> "[a]t least when the use of a drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable for penalty enhancement under the penalty enhancement provision of the Controlled Substance Act <u>unless such use is a but-for cause of the death or injury</u>. (Emphasis added).

In <u>Burrage</u>, a long time drug user had died following a drug binge that included use of heroin purchased from defendant Burrage. Burrage pled not guilty to charges that he had unlawfully distributed heroin and that "death ... resulted from the use of th[at] substance," which carried a twenty year mandatory minimum sentence under the Controlled Substances Act, 21 U.S.C. 841(b)(1)(C). Medical

experts testified that the decedent might have died even if he had not taken the heroin. The court instructed the jury that the prosecution had to prove only that heroin was a contributing cause of death. The jury convicted Burrage, and the Eighth Circuit affirmed.

The Supreme Court reversed, holding that where use of the drug distributed by the defendant is not an independently sufficient cause of death or serious bodily injury, the penalty enhancement does not apply unless such use is a "but-for" cause of the death or injury. Burrage at *9. The Court reasoned that Congress could have written the statute to refer to a "substantial" or "contributing" factor in producing death, but instead used language that imports but-for causality.  In its holding, the Court declined to address cases in which multiple sufficient causes independently, but concurrently, produce death, because there was no evidence that the victim's heroin use was an independently sufficient cause of his death.

Similarly, in this matter,  Ms. Calo's autopsy report stated that the cause of death was not merely due to cocaine use, but "acute intoxication due to the combined effects of cocaine and alcohol." The autopsy report also detailed the presence of prescription drugs in the decedent's system. Moreover, that Hoey and Calo were together for less than one hour on the evening of Calo's death raises a strong presumption that the myriad drugs and alcohol found in her system came from sources other than Hoey.  Calo's belongings, analyzed by law enforcement, included a red glassine envelope containing cocaine residue that was found in her purse.  Additionally, the statement of Noriega, Hoey's driver who was present on the evening in question, made clear that he had observed Ms. Calo when she first arrived at the hotel that night and that he found her to be "very high and out of it."

<u>See</u> Conway Aff. at ¶8. These two facts allow for the strong inference that Ms. Calo was already under the influence of cocaine before meeting up with Hoey.

Thus, dismissal of Count Two is proper as it would be impossible to conclude by a reasonable doubt that Hoey's alleged distribution of cocaine was the "but-for cause" of Ms. Calo's death.

In the alternative, we ask this Court to inspect the Grand Jury's minutes under Fed. R. Crim. Pro. Rule 6(e)(3)(E)(ii), for the purpose of determining whether the government charged the grand jury with what is now the incorrect interpretation of the Controlled Substances Act's death enhancement provision. Under <u>Burrage</u>, it is evident that <u>as matter of law</u>, that Hoey's actions cannot be the basis for criminal liability under the death enhancement provisions of 21 U.S.C. 841(b)(1). Fed. R. Crim. Pro. Rule  6(e) (3)(E)(ii) gives district courts the power to "authorize disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." To make this showing, the defendant "must demonstrate a 'particularized need' for the materials." <u>United States v. Ordaz-Gallardo</u>, 520 F. Supp.2d 516, 519 (S.D.N.Y. 2007)  Though this procedure is usually invoked in cases of government misconduct (which we do not allege herein), we do submit that the change in the interpretation of the law does warrant such a measure, as a ground does exist to dismiss count two of the indictment. "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 256 (1988) (internal quotation marks omitted). Here, it is clear that the grand jury's decision to

indict on Count Two would have been influenced by the government presenting the grand jury with the incorrect legal standard.

Accordingly, we ask that this Court inspect the grand jury minutes.

## POINT TWO: Count One should be severed because its inclusion would be prejudicial

A party may seek relief from prejudicial joinder under Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 states:

> [i]f it appears that a defendant or the government is prejudiced by a joinder of    offenses or of defendants in an indictment. . . the court may order an election or separate trials of counts, grant a severance of  defendants or provide whatever other relief justice requires.

Fed. R. Crim. Pro. Rule 14. The Supreme Court has instructed that "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear."  United States. v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008) citing United States v. Schaffer, 362 U.S. 511, 560 516. Motions to sever under Rule 14 are "committed to the sound discretion of the trial judge." United States v. Chang-An-Lo, 851 F.2d 547, 556 (2d Cir.1988).

Indeed, this court applies a "'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Shellef, 507 F.3d 82, 98 (2d Cir. 2007) (internal citations and quotations omitted).

Here, the potential for prejudice is actual, not merely hypothetical, as it relates directly to how the proofs will be presented at trial. In order to secure a conviction on Count One, the government must put forth an overwhelmingly convincing display of evidence of Hoey's narcotics distribution. Without a severance of this count, the government would be permitted to improperly bolster its proof on Count Two with evidence of Count One. That is, evidence of Hoey's participation in a cocaine distribution conspiracy in excess of five kilograms would necessarily prejudice a jury's consideration of the charges brought against him that he supplied the cocaine that killed Calo.

Though a finding of prejudice may warrant severance, it is true that a limiting instruction may cure a risk of prejudice. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Limiting instructions, however, are not per se adequate to cure such prejudice. "There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Burton v. United States,  391 U.S. 123, 135 (1968). We submit that this is such a case. Accordingly, severance should be granted to prevent the risk of prejudice to Hoey.

## POINT THREE: Defendant is entitled to a Bill of Particulars

**The purpose of a Bill of Particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution for the same offense. United States v Sturtz, 648 F. Supp 817 (S.D.N.Y. 1986) (internal citations omitted).**

In deciding a motion for a bill of particulars, the court should determine whether the defendant has been sufficiently appraised, by means of the indictment, prior proceedings and discovery, "of the essential facts of the crime for which he has been indicted...." United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973)

Here, Count One alleges that the conspiracy existed from "on or about 2005 up through and including in or about 2010." However, Count One fails to state any of the alleged overt acts necessary to support the government's charge that a conspiracy existed and that Hoey was involved in it. Moreover, the indictment does not provide the names of purchasers to whom the defendant allegedly sold narcotics, and also lacks the dates and locations of such purported sales. Nor has the government provided discovery containing any such information.  Thus , the indictment and any foregoing disclosures do not give the defendant adequate notice of the charges against him.

Information such as the names of persons the government will claim to have been co-conspirators and the location of acts engaged in by the principals are properly disclosed to a defendant accused of participation in a narcotics conspiracy. United States v. Mannino, 480 F.Supp 1182, 1185 (D.C.N.Y. 1979).  The accompanying affirmation sets out such information requests, which are absolutely necessary to permit the defendant to adequately prepare a defense to the conspiracy alleged in the indictment.

Further, under Fed. R. Crim Pro. Rule 16(a)(1)(F), the defendant is entitled to results or reports of tests and exams which are in the possession or control of the government and are known to the government or by the

exercise of due diligence may become known to the government and which are material to the defense or the government intends to introduce in its case-in-chief. Accordingly, the defendant has requested results of any and all lab tests.

## POINT FOUR: MOTION TO SUPPRESS EVIDENCE

In a motion to suppress physical evidence, the burden of proof is initially on the defendant. United States v. Sacco, 563 F.2d 552, 558 (2d Cir. 1977) Once the defendant has established some factual basis for the motion, the burden shifts to the government to show that the search was lawful. Id. The standard of proof on the party who carries the burden is a preponderance of the evidence. United States v. Allen, 289 F.Supp.2d 230, 242 (N.D.N.Y. 2003).

The Fourth Amendment demands that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Constitution, Amendment IV. The "Warrant Clause both 'requires particularity and forbids overbreath.'" United States v. Zemlyansky, 945 F.Supp.2d 438, 450 (S.D.N.Y. 2013), citing United States v. Cioffi, 668 F.Supp.2d 385, 390 (E.D.N.Y. 2009) The Amendment was enacted in response to the British general warrants which permitted "royal officials to search and seize whatever and whomever they pleased." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2084 (2011); see also, Coolidge v. New Hampshire, 403 U.S. 443, 467  (1971) ("Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings . . . The warrant accomplishes this . . . objective by requiring a 'particular description' of the things to be seized.")(Citations omitted). The particularity requirement, therefore,

removes "the unguided discretion of the officers executing the warrant" to decide "what items may be seized." United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990)

In determining the propriety of a warrant, two issues must be addressed: "(1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." United States v. Hernandez, 2010 WL 26544, at *7 (S.D.N.Y. January 6, 2010) (citations omitted).  A warrant containing "excessively broad categories of items to be searched for and seized . . .  thereby permit[ing] a searching officer to rummage through and seize nearly any conceivable paper and electronic document . . . provides an independent basis for deeming the warrant deficient." United States v. Zemlyansky, 945 F.Supp.2d 438, 456 (S.D.N.Y.2013); See also United States v. Buck, 813 F.2d 588, 591(2d Cir. 1987) (a warrant containing "general boilerplate terms, without either explicit or implicit limitation on the scope of the search" found to be impermissibly broad)

Here, Mr. Hoey moves to suppress any evidence seized pursuant to a warrant issued by a New York County Judge on January 11, 2009. As set out below and in the accompanying Affirmation of Joseph R. Conway Esq., the warrant  (1) was impermissibly overly broad because probable cause did not exist for all the listed items to be seized, and (2) failed to particularize the sought-for items, resulting in a prohibited general search.

**At best, the supporting affidavit established probable cause to search the "gym bag" for cocaine. According to the affidavit, Mr. Hoey "produced a**

quantity of cocaine from a dark-colored gym bag . . . set the cocaine on a table in the hotel room ... and [Zaobkiw], Calo and Hoey all ingested said cocaine." (See Conway Aff. at ¶ 12, Exhibit E). After Calo became ill, "Hoey proceeded to remove the cocaine from the . . . table, brushing it into a clear plastic bag." (See Conway Aff. at ¶ 12, Exhibit E).  Subsequently, at Mr. Hoey's instruction his chauffer Noriega  took a dark-colored gym bag to the white Lincoln Town Car, drove to Hoey's business on Long Island, and transferred the bag into the trunk of another company car, the black Chrysler. On the date the warrant was signed, Noriega told investigators that the bag "should still be in" the trunk of the Chrysler, which Noriega identified as the black limo." (See Conway Aff. at ¶ 7, Exhibit C). Based upon these facts, probable cause existed to search the trunk of the black Chrysler for the gym bag, and examine its contents for cocaine that was present in the hotel on the evening in question. Nothing else in the supporting affidavit linked any evidence of criminal activity to the white Lincoln Town Car or the black Chrysler. Any evidence seized from the white Lincoln should be suppressed.  (See Conway Aff. at ¶ 16, Exhibit G)

Instead of properly seeking a warrant for the dark-colored bag inside the black Chrysler, law enforcement secured a warrant for an impermissibly broad category of materials without probable cause or even a marginal effort of justification. Though the supporting affidavit identified the suspected wrongdoing as "possession of cocaine," the specific item requests boldly sought authorization to search for items more appropriately connected with large scale drug traffickers. It is clear that the police simply inserted boiler-plate language from another warrant, and, without any reasonable basis, sought to search Noriega's home and the two vehicles for

virtually anything. There simply was no limitation on the scope of the search. The warrant permitting officers to search for

iPhones, hard drives, CD ROMs, computer disks, cellular telephones, pages, identification bearing the name and photograph of any   person, telephone books, address books, calendars, personal papers and tooth and hair brushes

"renders it for all practical purposes, a prohibited general warrant to search . . . for evidence of a crime." United States v. Zemlyansky, 945 F.Supp.2d 438, 459 (S.D.N.Y.2013). The searching officers had "impermissibly broad discretion to seize and peruse" the cell phones, computers, personal documents and effects "be they target subjects" or innocent parties. Id. at 457-59.

The search warrant permitted a search of the white Lincoln Town Car without any justification. Moreover, it also impermissibly authorized the full search of both vehicles. In dicta, the Supreme Court in United States v. Ross stated that "[a] warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search . . . Probable cause to believe that a container placed in the trunk of a [vehicle] contains contraband or evidence does not justify a search of the entire cab." 456 U.S. 798, 821(1982) The search of the front console of the black Chrysler was unlawful, as the gym bag could not possibly have fit in the console. Simply put, the scope of the search warrant was far broader than necessary, as the particularized probable cause existed for the gym bag and the trunk of the black Chrysler, but not the entire vehicle. See  United States v. Galpin, 720 F.3d 436, 447 (2d Cir. 2013) ("Where a warrant authorizes a

17

search…the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry; an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's video collection.")  Accordingly, the search of the front center console of the black Chrysler was unlawful, requiring suppression of the contraband recovered therein. (See Conway Aff. at ¶ 14, Exhibit F)

Last, any effort to rely upon the alleged good faith of the officers is misplaced. "Suppression is appropriate where probable cause is 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Zemlyansky, 945 F.Supp.2d 438, 465 (S.D.N.Y.2013).  The warrant was devoid of any reasonable basis to search the white Lincoln Town Car. In addition, the supporting affidavit's failure to support the request for numerous items mentioned demonstrates the officers disregard for the Fourth Amendment requirements. Therefore, they "do not fall within the shield of the good faith exception," and "suppression of the evidence from the search . . . is warranted." Id. at 476.

## **CONCLUSION**

WHEREFORE, it is respectfully requested that the Court grant this motion for dismissal, severance, suppression, and for a Bill of Particulars, along with any other relief it deems proper.

Dated:   Mineola, New York
         March 31, 2014


_____
Joseph R. Conway
Attorney for Defendant Thomas Hoey
LaRusso & Conway
300 Old Country Road
Suite 341
Mineola, New York 11530
516-248-3520
516-248-3522 Fax
jconway@larussoandconway.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA                    **11-337(S-3)(PKC)**

vs.                                                      **AFFIRMATION**


THOMAS HOEY,

                              Defendant.

_____


     Joseph R. Conway, an attorney duly licensed to practice law in the State and Southern District of New York, hereby affirms under the threat of perjury the following:

1.     I am the attorney of record for the defendant Thomas Hoey and I make this affirmation in support of his application for pretrial relief.

2.     I am familiar with the facts and circumstances of this case, the sources of my information being conversations with Mr. Hoey, conversations with the Office of the United States Attorney, and my review of the indictment and all discovery materials provided to date.

3.     By this motion  Mr Hoey seeks an order i) dismissing Count Two of the indictment; ii) suppressing all evidence obtained in violation of Mr. Hoey's Fourth Amendment rights; iii) severing Count One of the

indictment and iv) ordering the government to furnish a Bill of Particulars and provide reports of any scientific tests.

I.   <u>MOTION TO DISMISS</u>

4.   Hoey is charged with two violations of the Controlled Substances Act. Count One charges him with intentionally and knowingly conspiring to distribute five or more kilograms of cocaine in violation of 21 U.S.C. 841(b)(1)(A). Count Two charges him with intentionally and knowingly distributing and possessing cocaine that resulted in the death of Kim Calo on or about January 10, 2009 in the Kitano Hotel in New York, New York, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C). **<u>See</u> Exhibit A (Indictment).**

5.   Ms. Calo's autopsy report undisputedly shows that her death was caused by "acute intoxication due to the combined effects of cocaine and alcohol." The report also details the presence of prescription drugs in the decedent's system.  **<u>See</u> Exhibit B (autopsy report).**

6.   As set forth more fully in the accompanying memorandum of law, the autopsy report's findings preclude conviction on Count Two under the logic of the Supreme Court's recent decision in <u>United Sates v. Burrage</u>, and that Count should be dismissed.

**7.**   Additionally, a summary of an interview the police conducted with Hoey's driver (Alejandro Noriega), who had seen Ms. Calo the night of her death, is annexed as **Exhibit C (Noriega's statement)**

8. In the interview, Noriega stated that at the time when the women arrived at the hotel, that he observed Ms. Calo and found her to be "very high and out of it." Noriega also mentioned that Nicole had stated to him (about Calo) that "her friend loved to get high." <u>See</u> Exhibit C.

9. Further, during the investigation, law enforcement recovered Calo's purse which contained a "red glassine" envelop containing a residue, subsequently analyzed to be cocaine. (<u>See</u> **Exhibit D**, **(discovery Bate Stamp 000025 and 000049)**

10. Accordingly, it can be strongly inferred that Ms. Calo was already under the influence of drugs and alcohol before seeing Hoey, lessening the likelihood that his actions were the but-for cause of her death.

II.    <u>SUPPRESSION OF EVIDENCE SEIZED VIA SEARCH WARRANT</u>

11. Hoey further moves to suppress the physical evidence seized unlawfully in violation of his constitutional rights derived from the Fourth Amendment of the United States Constitution.  As set forth more fully in the memorandum of law, the search warrant  was impermissibly overly broad because probable cause did not exist for all the items listed to be seized, and the warrant also failed to particularize the sought-for items resulting in a prohibited general search.

12. On January 11, 2009, an affidavit was filed in support of an application for a search warrant of, *inter alia*, two automobiles belonging to Mr.

Hoey's company. **(Exhibit E) (affidavit in support of search warrant)**

13.   The affidavit set forth that on the night of the incident, witnesses claimed that i)  Hoey "produced a quantity of cocaine from a dark-colored gym bag . . . set the cocaine on a table in the hotel room, and [Zobkiw], Calo and Hoey all ingested said cocaine"; (ii) after Cali became ill, "Hoey proceeded to remove the cocaine from the above-referenced table; and (iii) Hoey then instructed Noriega to take the "dark colored gym bag away."  Noriega also told investigators that he "carr[ied]" the gym bag into a white 2005 Lincoln Town Car, New York License Plate DFY9960 "Lincoln Town Car"), and later transferred the gym bag into the trunk of a Black Chrysler with New York License Plate DYU 6320 ("Chrysler"),  located at Hoey's company, Long Island Banana Corporation, at 28 William Street, Lynbrook, New York. Noriega then "re-entered" the Lincoln Town Car, and drove home to his basement apartment located at 190 Harvard Street, Hempstead, New York. Accordingly, probable cause existed to search the trunk of the black car for the gym bag, which was believed to contain cocaine that was present in the hotel room that night.

14.   However, an examination of the police invoice sheets reveals that the front console of the black Chrsyler was searched, and that search revealed cocaine and drug paraphernalia. There was no probable cause to search the front console of the black Chrysler for evidence of any crime, as a gym bag would be too large to fit in an automobile's front

console. **(Exhibit F) (Property Clerk's Invoice and Laboratory Report numbered P3554350)**

15.   There was no probable cause to search the white Lincoln Town Car for evidence of any crime, as the officer's affidavit stated that Noriega admitted to transferring the cocaine from the white car to the black chrysler.

16.   However, the white vehicle was fully searched. **See Exhibit G (Property Clerk's Invoice and Laboratory Report #P355434, #P355436 and 355437)**

17.   Further, the affidavit in support of the search warrant requested permission to search for and seize numerous boiler-plate items, including other evidence of the possession and distribution of cocaine, even though the affidavit claimed that "there was reasonable cause" only to believe the crimes under investigation were possession of cocaine and conspiracy to commit that crime.

18.   Accordingly, the application for the search warrant was overly broad.

19.   However, Judge Abraham L. Clott signed a warrant authorizing the search of, *inter alia*, both the white and black automobiles. **See Exhibit H) (Search Warrant)**

20.   All evidence seized from both automobiles should be suppressed.

III.   <u>MOTION TO SEVER</u>

21.   As set forth more fully in the accompanying memorandum of law, Hoey also seeks to sever Count One of the indictment on the principle that its inclusion will prejudicially effect the jury on Count Two.

IV.   <u>BILL OF PARTICULARS</u>

22. As set forth more fully in the accompanying memorandum of law, Hoey, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully moves this Court for an order requiring the government to furnish him with a Bill of Particulars providing the following information:

A) A list of the names of all persons whom the government claims or will claim were co-conspirators of the defendant, including all persons referred to in Count One of the Superseding Indictment as "others known."

B) A list of each drug transaction in which the government claims Thomas Hoey was involved, together with any other involved parties, the nature and amount of the drug and date and location of said transaction.

C) With respect to Count One, the date of the earliest statement and/or event upon which the prosecution will rely to prove that the conspiracy existed.

D) With respect to Count One, the nature of any and all statements and/or events, other than those already contained in the indictment, upon which the prosecution intends to rely to prove that the conspiracy existed.

23.     In addition, under Fed R. Crim Pro. Rule 16(a)(1)(F), the defendant requests results or reports of tests and exams which are in the possession or control of the government and are known to the government or by the exercise of due diligence may become known to the government and which are material to the defense or the government intends to introduce in its case-in-chief.

<u>**CONCLUSION**</u>

WHEREFORE, it is respectfully requested that the Court grant this motion for dismissal, suppression, severance and for a Bill of Particulars, along with any other relief it deems proper.

Dated:     Mineola, New York
           March 31, 2014

Respectfully submitted,

_/s/ Joseph R. Conway_
JOSEPH R. CONWAY
Attorney for Defendant Thomas Hoey
LaRusso & Conway
300 Old Country Road
Suite 341
Mineola, New York 11501
516-248-3520
516-248-3522 Fax
jconway@larussoandconway.com