UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                               11-cr-337 (PKC)

       -against-                                                                           ORDER

THOMAS HOEY,

                Defendant.

-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Thomas Hoey moves pro se for a reduction in his sentence for "extraordinary and compelling" reasons related to the COVID-19 pandemic. 18 U.S.C. § 3582(c)(1)(A)(i). Hoey filed his motion on February 8, 2021 and submitted a supplemental letter on February 15, 2021. (Docs 287 and 289). The government opposes his motion. (Doc 290). Hoey subsequently requested three extensions of the deadline for him to reply, which he ultimately filed on June 9, 2010. (Doc 296). For reasons to be explained, Hoey's motion will be denied.

        Hoey had a sexual relationship with Nicole Zobkiw over a number of years. (Presentence Report rev'd Aug. 16, 2018 ("PSR") ¶ 12). On the night of January 9, 2009, Hoey invited Zobkiw and her acquaintance, Kim Calo, to his hotel room at the Kitano Hotel in Manhattan. (PSR ¶¶ 13–14). They arrived by taxi from Long Island in the early morning hours of January 10, 2009, and Hoey's limousine driver, co-defendant Alejandro Noriega, met the women and paid their fare. (PSR ¶¶ 13–14). Hoey offered both women cocaine, which they consumed, and had sex with them. (PSR ¶ 14). Hoey then offered Calo more cocaine, which she consumed and almost immediately collapsed forward onto the floor and began convulsing, shaking and foaming at the mouth. (PSR ¶ 14).

Zobkiw wanted to call an ambulance, but Hoey refused to allow her to use the phone. (PSR ¶ 15). She then went to the hotel front desk. (PSR ¶ 15). The hotel staff called Hoey, who told the employee that Calo did not need medical help. (PSR ¶ 15). Zobkiw returned to the room and again tried to get Hoey to call an ambulance, and he again refused. (PSR ¶ 16). Zobkiw returned to the front desk and although the hotel staff still refused to call an ambulance, they sent a security guard to the room. Hoey stopped the guard at the door and insisted that Calo was fine. (PSR ¶ 16). After the guard left, Zobkiw was able to enter the room and saw that Calo's lips were blue. Zobkiw again returned to the lobby to tell the staff that an ambulance was needed. (PSR ¶ 17). The security guard returned to the room and this time entered and saw Calo lying on the couch. (PSR ¶ 17). Hoey again said that Calo was fine and no ambulance was needed and said a "doctor friend of his was on the way over." (PSR ¶ 18). Hoey's friend arrived and declared Calo to be dead. (PSR ¶ 18).

Later that morning, Zobkiw gave a full statement about the night's events to police. (PSR ¶ 19). She subsequently made truthful statements to law enforcement on two separate occasions in 2009 and 2010. (PSR ¶¶ 20–21). On April 6, 2011, Zobkiw perjured herself before a grand jury sitting in the Southern District of New York by providing testimony favorable to Hoey. (PSR ¶¶ 25–29). Prior to this testimony, Zobkiw told Hoey about the grand jury subpoena, and he arranged for an attorney to consult with her. This attorney, who was paid for by Hoey, "repeatedly told Zobkiw that he was trying to get Zobkiw to do what is best for Hoey," coached her to give false answers and promised to help her with a child-custody dispute. (PSR ¶ 32). In addition, Hoey and the attorney had Zobkiw sign a false written statement consistent with her perjurious testimony, with the intent that the document be submitted to the

United States Attorney's Office. (PSR ¶ 35). The attorney was convicted upon a guilty plea on conspiracy to suborn perjury and received principally a 48-month sentence. (Doc 118).

On August 14, 2014, Hoey pled guilty pursuant to a plea agreement to one count each of conspiracy to distribute cocaine, conspiracy to suborn perjury and obstruction of justice. (Doc 174; Aug. 14, 2014 Plea Tr.). Hoey appealed his original sentence, and on remand, the Court resentenced Hoey de novo to a term of 141 months' imprisonment, three-years of supervised release and a mandatory $300 special assessment. (Doc 281).

On April 13, 2015, Hoey was charged in a separate four-count indictment that asserted he embezzled approximately $750,000 from employee benefit plans at the banana import company for which he served as president and trustee. 15 cr. 229 (PAE), Dkt. 1. A jury convicted Hoey on all four counts. Judge Engelmayer sentenced Hoey principally to a term of 78 months' imprisonment, with 12 months to be served concurrently with, and 66 months to be served consecutively to, the sentence imposed by this Court. Hoey separately moved for a sentence reduction in his case before Judge Engelmayer, who denied the motion on June 30, 2021. United States v. Hoey, 15 cr 229 (PAE), 2021 WL 2689215, at *5 (S.D.N.Y. June 30, 2021).

Hoey has been in custody since December 19, 2013 and has served approximately 91 months, or 65%, of the 141-month sentence imposed by this Court. According to the Bureau of Prison's ("BOP") website, Hoey's expected release date is August 31, 2028, which presumably accounts for the 66-month consecutive sentence imposed by Judge Engelmayer.[1]

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

---

[1] https://www.bop.gov/inmateloc/ (last accessed July 22, 2021).

of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C.§ 3582(c)(1)(A)(i).  The Court has broad discretion and may consider all circumstances advanced by a defendant for sentence reduction in combination and in isolation.  See United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); accord United States v. Butler, 845 Fed. App'x 74, 75 (2d Cir. 2021) (summary order) ("District courts have broad discretion in evaluating whether an inmate has presented extraordinary and compelling circumstances for release.").  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Roney, 833 Fed. App'x 850, 852 (2d Cir. 2020) ("Prior to reducing a defendant's term of imprisonment, however, a district court must consider the factors set forth in section 3553(a) to the extent that they are applicable." (quotation marks omitted)).

   Hoey is currently housed at USP Lewisburg.[2]  On December 8, 2020, Hoey submitted a written request for sentence reduction to the Warden of FCI Fort Dix, where he was previously housed.  The Warden responded on December 11, 2021, requesting additional information from Hoey, who did not respond and instead filed this motion.  The government does not dispute that Hoey has exhausted his administrative remedies.  (Gov't Mem at 7).

   Hoey asserts extraordinary and compelling reasons related to the COVID-19 pandemic, including that he faces certain risk factors if he were to be infected with the virus. Hoey is currently 53 years old.  He states that he suffers from hypertension and sleep apnea.

---

[2] According to the government, in late February 2021 Hoey was transferred from FCI Fort Dix to USP Lewisburg. (Gov't Mem at 8).

According to the Centers for Disease Control ("CDC"), hypertension "can make you more likely to get severely ill from COVID-19."[3] This is in contrast to other conditions, such as pregnancy, where infected persons "are more likely to get severely ill from COVID-19 . . . ." In the BOP medical records that the government submitted, a recent medical evaluation from November 6, 2020 measured Hoey's blood pressure at 98/62 and noted that he has "[e]lev blood pressure reading w/o hypertension." (Gov't Mem. Ex. C at 6–9). Guidance from the CDC confirms Hoey's non-diagnosis, which defines stage-1 hypertension as a systolic blood pressure between 130-139 mm Hg or diastolic blood pressure between 80-89 mm Hg.[4]

BOP medical records show that Hoey does have sleep apena. However, a November 2, 2020 medical evaluation states that "he is doing maneuvers, where he no longer has problems with sleep apnea." (Ex. C at 11). Although Hoey points to some research suggesting sleep apena might be associated with an increased risk of severe illness from COVID-19, the CDC has not identified it as a condition that places individuals at heightened risks.

On December 17, 2020, Hoey tested positive for COVID-19. Hoey was asymptomatic and the record does not indicate that he suffers any lasting effects from the virus. (Ex. C at 1). Current CDC guidance reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare" and that the "CDC is actively working to learn more about reinfection to inform public health action."[5] Moreover, Hoey has been fully vaccinated against COVID-19. Hoey, 2021 WL 2689215, at *5 (Judge Engelmayer order denying sentence reduction).

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 22, 2021).
[4] https://www.cdc.gov/bloodpressure/facts.htm (last accessed July 22, 2021).
[5] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last accessed July 22, 2021).

Hoey also asserts that the conditions at FCI Fort Dix, where he was previously housed, and at his current facility, USP Lewisburg, present a greater risk of his contracting COVID-19. A website maintained by the BOP states that, as of July 22, 2021, no inmates and one staff member of USP Lewisburg are confirmed positive for COVID-19.[6] Currently, 556 inmates at USP Lewisburg have completed the COVID-19 vaccination process.[7] Regardless, the Court recognizes that individuals with pre-existing conditions can face a heightened risk of serious consequences from the virus, if infected, whether they are at liberty or imprisoned. A person who is at liberty, however, has an arguably greater ability to avoid infection because of his freedom to quarantine, social distance or utilize personal protective equipment as he chooses, options that are not always available to a person who is incarcerated. The Court also acknowledges that a person at liberty has the freedom to select a medical provider of his choosing in the event he contracts the virus and this, again, an incarcerated person does not have the same option.

On a motion for sentence reduction, the Court must also consider the section 3553(a) factors. In Hoey's case, application of these factors counsel strongly against a sentence reduction.

The Court provided a written statement of reasons for Hoey's sentence at the time of his resentencing, and the Court finds that those reasons continue to forcefully apply on his motion for a sentence reduction. (Doc 281-1). Hoey was given the opportunity to manage his family's successful banana business "[b]ut he used the wealth to fund a life in which his own personal pleasure was at the center and friends were acquired and maintained by giving them cocaine." (Id. at 3). Hoey's cocaine distribution was not sales "done for monetary gain. It was

---

[6] htttps://www.bop.gov/coronavirus/ (last accessed July 22, 2021).
[7] https://www.bop.gov/coronavirus/index.jsp (last accessed July 22, 2021).

done to support his social stature, to attract women and hanger-ons in other words, the cocaine distribution was integral to his lifestyle. It is a fair inference that the crimes of suborning of perjury and obstructing of justice were committed for the purpose of continuing uninterrupted his lifestyle of cocaine, sex and parties." (Id.) Although the Court noted that Hoey did not set out to cause the death of Ms. Calo, "his callousness and indifference to the fate of a person to whom he had given cocaine and who had an apparent reaction to the cocaine sealed her fate." (Id. at 5).

The Court's statement of reasons also identified the need to protect the public from further crimes of Hoey, his lack of respect for the law and the need for just punishment:

> The trail of sorrow and misery created by Hoey includes the corruption of his employee Mr. Noriega who stands convicted in this Court, the conviction of Mr. Balaban who received a four year sentence for participation in the conspiracy to suborn perjury, the conviction of Ms. Zobkiew who was found guilty by a jury of perjury and has since died, and the death of Ms. Calo, whose two sons are now without a mother.
>
> Thomas Hoey, Jr. is a self-absorbed, self-pitying man who has hidden much of his conduct from others around him and is a very real danger to the community. He preys on women but claims to be their friend and confidant. Hoey used his wealth and perception of power to keep the cocaine party going. He was not going to let law enforcement take him down no matter who he needed to destroy in the process.
>
> He deserves just punishment, the public needs to be protected from further crimes of this defendant. A stiff sentence will promote the respect for our system of law for which Hoey has shown profound contempt and disrespect.

(Id. at 6). Reducing Hoey's sentence would severely undermine the goals of his original sentence, and based on the extraordinary and compelling reasons advanced by Hoey, is unwarranted on this record.

CONCLUSION

The Court has considered the time Hoey has served in prison to date, his age, medical conditions, conditions at his BOP facility, the ongoing COVID-19 pandemic, his

Case 1:11-cr-00337-PKC   Document 298   Filed 07/22/21   Page 8 of 8

- 8 -

rehabilitation to date and all other factors cited to the Court. Taking into account all arguments presented by Hoey in favor of a sentence reduction and considering them both in isolation and in combination, and considering all of the section 3553(a) factors, the Court concludes that Hoey has not demonstrated extraordinary and compelling reasons for a reduction in his sentence. His motion is therefore DENIED. The Clerk is directed to terminate the motion. (Doc 287).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
July 22, 2021